Case number 251538 Aaron Hall et al. versus Trivest Partners LP et al. Or arguments not to exceed 15 minutes per side. Mr. Smallsback, you may proceed for the appellant. Good morning again, your honors. This time I will be addressing the arguments for both the original and the new Trivest defendants who were added in the amended complaint. And I'd like to again reserve three minutes for rebuttal. This second appeal comes into play if the district court had personal jurisdiction, and if it did, the right thing to do is to compel arbitration. And this appeal starts and should finish with the resolution of arbitrability under this court's decision in Blanton, which controls for arbitration agreements like these that incorporate the AAA rules. Well, I mean, I think the waiver issue would precede this. And I mean, so you file a 12B2 and a 12B6, right? How far, it was well into the litigation, right? So, your honor, our primary argument is that those are questions for the arbitrator. I'm asking, I'm going to the district court's determination that you waived your right to demand arbitration, or at least that some of these Trivest entities did, the old ones, right? How long had you been in litigation, the old ones, before you filed this motion to dismiss? It had been about two years, your honor, and I want to answer your question. You say that you waited that long to demand arbitration because you had just then received in discovery the agreements, right? That's correct, your honor. Is it your position as an officer of the court that you did not know about those agreements before then? So, no. It's not your position because, frankly, the brief seemed very carefully to write around the question without answering it, whether you all knew, and there seemed to be some pretty strong common sense arguments by Mr. Colson, and I forget whether the district court said that, of course, you guys knew about these agreements. So, why would it matter that you had not received, you know, probably a duplicate copy, so to speak, from the plaintiffs until shortly before you seek arbitration two years in? So, to clarify, my answer was no, we did not know that these particular plaintiffs had signed arbitration agreements. Did you, I mean, you know, did you really have any reason to think that some of these folks who were buying the system didn't have arbitration agreements? Yes, your honor. I'm happy to agree that we had reason to think that there was evidence that this was a common or even standard arbitration agreement, but what's important is that we can't go into court and say we think they have an arbitration agreement. We need the arbitration agreement. Until we have the agreement that they actually signed, we don't have a rule 11 basis for saying that they should be bound to this contract that we only have reason to think exists, and I understand the impulse, your honor. I think it's – Well, wait a minute. Your clients should know whether they signed arbitration agreements or not, and if they claim they didn't know, they should be held to account if they did sign them, and they're now claiming they didn't know. So all you had to do is ask your clients if they had signed these things, don't you think? No, your honor, because my clients did not sign the arbitration agreements. My clients are third parties who were not direct signatories to the agreement, and our argument is that under Blanton, the question of whether they can enforce that agreement, which was signed by Power Home Solar, is a question for the arbitrator, as we say the question of whether any litigation conduct waived the right to enforce is also a question for the arbitrator. What's the legal relationship of your client to the people that did sign the agreement? We were an investor who had no control over that company. We just owned 25 percent of it and provided for it. And you're saying that your clients are not bound by the arbitration agreement that the principal investor signed? No, your honor, we are saying that the plaintiffs are bound by the arbitration agreement that they signed, and we as a third party can enforce it because the alleged conduct was intertwined with that of Power Home, which did sign the agreement. But, yes, this is a problem because this is a RICO case with a fairly attenuated relationship between my client, the minority investor, and the company that allegedly did the wrongdoing. I mean, was there some obstacle as a 25 percent shareholder of the company to obtaining copies of these arbitration agreements from the company? From the company, yes, because the company was in bankruptcy at that point. But, yes, your honor. Nobody over there could? I mean, I'm deeply skeptical that, I mean, this would seem to be where there's a will, there's a pretty easy way to get the arbitration agreement. And so I have great sympathy for Judge Beam's point that, you know, it's a little late two years in to be asserting that for the first time. So I think, your honor, that is an impulse that was the same impulse that the district court had in the Pacifica case, which is this, you know, oh, come on, you could have gotten it if you really wanted it. And what this court held in Pacifica is that's not good enough. And it held on clear error review. That's not good enough. You have to actually know that or have reason to know that this particular plaintiff had signed the agreement. And so is it likely that most power home customers had signed an agreement? Sure, I think it is. But can we enforce an agreement we don't have that we aren't sure yet exists because we haven't seen it? I don't think we can. And we can't be held accountable for not moving to calibration. I appreciate your argument. But my primary argument, your honor, is that that is a question for the arbitrator, not the district court. And that's our primary reason for reversing here. What is your basis as a non-signatory to the arbitration agreement? What's your statute or legal basis for being able to enforce the arbitration? Right. So it's a question of Michigan law, again, for the arbitrator of equitable estoppel. And, your honor, it's the exact theory in Blanton that this court said the arbitrator has to decide. It's this third-party enforcement because there's alleged interrelated misconduct. And so all we're asking is for this panel to do exactly what Blanton did, which is say, you know, we don't have to decide if we have the power to enforce that agreement. It's the arbitrator's job to decide whether we have the power to enforce that agreement. So you moved for arbitration after you had challenged the personal jurisdiction of the court? That's correct, your honor. And that was pending, that motion. That motion had already, it was pending up through this court. So you're invoking Michigan law to arbitrate while your motion to dismiss for lack of personal jurisdiction is pending. And you think that preserved it, okay. Yes, your honor. It's well-established that, well, I shouldn't say well-established. I think plenty of courts have recognized that personal jurisdiction is not the sort of issue that waives the right to pursue arbitration. What I'm saying is you're invoking Michigan law to arbitrate seems to be contrary to your argument that the court lacks personal jurisdiction. I don't think. Because you're invoking the laws of the foreign state, aren't you? Right, but I don't think that has anything to do with personal jurisdiction, which is whether the claims in the case arise from anything related to Michigan. Well, if you're assuming under, if the case was a state law case, there are certainly case laws saying that when you try to invoke the powers of the court for affirmative relief, that you are acting contrary to your argument that it lacks personal jurisdiction over you. Right, and that's my friend's argument that we invoked the merits powers of the court. I think that's his real argument is that we asked for dismissal. But the point is that when we asked for dismissal, we had to have then known about these individual plaintiffs' arbitration agreements. Was it all one motion? I mean, it was all one motion. The first motion to dismiss did not raise arbitration. Was that a 12B-6? That was 12B-2 and 12B-6 and 12B-6. I mean, that's a tall glass of water to file a 12B-6 and then like a year later say you want to arbitrate. Right, Your Honor, but what Pacifica says is that you have to, when you file the 12B-6 motion, you have to have that knowledge. But I would like to address what is really my primary argument, which is that these are all questions for the arbitrator. As to the waiver by litigation conduct, we're asking you to say exactly what the Tenth Circuit said in the Gold Group case and what the Alabama Supreme Court said in the Riedstrom case, which is that this AAA rule that is incorporated into this arbitration agreement, it is broad enough to require arbitration of not just of arbitrability but of this question about waiver by litigation conduct. Well, that's something that, I mean, I thought we had precedent on that, that waiver by litigation is something we decide, but absent express language expressly reaching that issue. I mean, Judge Batchelder just had an opinion this year, I thought. In the case you're citing. Right, that's the Pacifica case. And so it's my job to tell you why this isn't the Pacifica case. And, Judge Kethledge, I think it's an important distinction. It's not express language. It's the clear and unmistakable test, which is the same test that you apply for gateway questions like arbitrability. So you're saying that whatever Blanton was talking about that you needed, that satisfies whatever Judge Batchelder was saying you needed in Christ of Pacifica? That Blanton did, yes. But, Your Honor, all we're saying is that the Tenth Circuit got this just right in the Gold Group case. If you read that case, you'll see it's the same AAA jurisdiction arbitrability language, and the Tenth Circuit says, yes, that applies when you have allegations of waiver like this. And the Alabama Supreme Court says the same. What's the language that you say clearly reaches waiver by litigation conduct? So it's Rule 9a, the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement. That's the language. That just seems not to reach this. It means scope of the agreement, validity of the agreement. It's all stuff pertaining to the agreement's boundaries, scope, compass, not whether I chose not to invoke or I waived my rights that otherwise would have been in that compass. Right. So the key word, Your Honor, is jurisdiction. Those other words, existence, scope, validity. Waivers are jurisdictional. It goes to the arbitrator's jurisdiction. The argument on the other side is you waived arbitral jurisdiction by filing these motions. And that is what happened here. It also goes to the court's jurisdiction. The court thinks it's trying to rule on a matter that's been pending for two years. I see that my time is up. May I just answer that question, Your Honor? Sure. Go ahead. So the question, we're interpreting an agreement here. And so whether or not it also goes to the court's jurisdiction, all arbitration questions go to the court's jurisdiction. But the language that you have to give effect to here is this Rule 9A, the arbitral jurisdiction provision. This does go to arbitral jurisdiction. All right. Thank you very much. Thank you, Your Honor. And we'll hear from opposing counsel. Good morning once again, Your Honors. May it please the Court, Nick Colson on behalf of the plaintiff's appellees. We request that the district court's denial of the defendant's motion to compel arbitration be affirmed as to all defendants. The court's already gotten into the background here, whereby the original defendants sought a complete and total victory by having every one of the causes of action dismissed on the merits. The district court correctly recognized that that is the single strongest factor and is generally outcome determinative when you have sought a total victory and then you don't like the way that the case is going and you decide you want another bite at the apple in a different setting, and then you move to compel arbitration. Briefly, to address the Pacifica case, the issue was that these were all plaintiffs who had bought cars at different dealerships, and these were car dealership arbitration agreements that the auto manufacturer wanted to invoke. What the court said there is, look, some of them have arbitration agreements, some of them don't, and until you know whether a particular plaintiff is one of these people who went through a dealership that has one or someone who went through a dealership that doesn't have them, you couldn't be on notice of your right to arbitrate as to that particular plaintiff. In this situation, every single power home solar contract had an arbitration agreement at all times that are even remotely relevant to this case. The district court- Is that contested in this case? It's never been contested, Your Honor, and the district court recognized a number of the factual points that we made in support of that, including that it was extensively reviewed in their due diligence process, that they were aware of the significance. They had a case that went all the way up to the Supreme Court for a petition for certiorari that was a potentially existential class action to this company that the defendants owned 25% of, and it was the arbitration agreement that wound up being fatal to that class action, and they followed it closely. That's all in the record. It's in the district court's order. But there are also something like 20 other cases where these defendants were named where it wasn't a RICO case. It was either a contract or breach of implied warranty or a UDAP case, and the contracts were attached. So not only did they have them, but it's telling what they did in those cases because in none of those cases did they move to compel arbitration, including one case- Were those cases out of state, or were there some other Michigan cases? One of them was actually in front of Judge Beam, Your Honor. So it was another Michigan case. There were a number of them in Ohio. But in all of those cases, they didn't move to compel arbitration, and in several of them, they moved to dismiss. I wonder if, I mean, does the law vary from state to state as to whether the non-party in their position has an ability to invoke the arbitration clause? It does, however, not at the time, at least as between Michigan and Ohio, not materially. And in Michigan- Do you believe the Ohio law is the same as Michigan? At the time, it was. Ohio has since narrowed the scope of when a non-party is allowed, a non-signatory is allowed to invoke it, but at the time- Law in Florida. You know, Your Honor, I don't know. I don't know that. That would be interesting to know. I think the choice of law issue is governed by the fact that the contract just calls for Michigan choice of law by virtue of it says wherever- So you think Michigan law is going to apply regardless of where this case is? I do, Your Honor. I do, Your Honor. It calls for the application of the law where the solar system was installed. All of them were in Michigan in this case. So they knew that every single one of these had arbitration agreements. They showed no interest in moving to compel arbitration until such time as they didn't like the trajectory of the litigation, and then they then decided to do it. But further, what happened is that Mr. Waller filed a motion first to compel arbitration, and then at a status conference with the district court, the district court expressed frustration that it was being filed this late. The court thought that we were getting ready to tee up class certification and that the case was proceeding and had serious concerns about how long the case had already proceeded, given the defendant's resistance to discovery. And the district court asked the Tribest defendants whether they intended to also move to compel arbitration, and they said that they did not know. That was a status conference in October of 2024, October 24th, where the district court gave them a deadline and said, if you're going to file this, you need to file it, but I'm going to look at these waiver arguments. And so the district court correctly recognized that the one factor that just controls the whole thing is the fact that they had sought a complete and total victory on the merits, but then also properly considered as further support all of their additional conduct in the litigation to that time. And the court ruled on that 12B6 part of the motion, right? Absolutely, Your Honor. And it was with respect to the RICO claims that the defendants continue to press here today in terms of whether we had stated a claim, and it was also with respect to the MCPA, the Michigan Consumer Protection Act claims. So they sought a complete and total victory on multiple grounds, one of which was entirely merits-based. They still press that to this day. So they're still invoking the court's jurisdiction. I don't think you're invoking the court's jurisdiction when you're moving to dismiss. I mean, 12B6 is filed at the same time as the 12B2, right? It can be. I don't think you waive it. I think you can do both. You challenge jurisdiction and the merits at the motion to dismiss stage. So I don't think you can say that's an affirmative. For me, I'm concerned more about invoking the court to compel arbitration. That's when you are asking for affirmative relief from the court. It's not when you're dismissing. So, Your Honor, I apologize if I was unclear. I did not mean to suggest that the 12B2 motion at the outset was undermined by the 12B6 motion. The point is that this court's jurisprudence is very clear that the most inconsistent thing one can do with preserving the right to compel arbitration is asking for affirmative relief in the form of dismissal on the merits, specifically including a 12B6 motion, because they're trying to get an order that says you win, case closed. And if they don't like it, they get to go start the process all over again if they're allowed to wait two years and seek arbitration and go in front of a different forum that's not going to be bound by any of the prior rulings in the case. So that's the concern that's at issue here. But because the district court did not reach the issue of whether the waiver applies to the new Tribas defendants, noting that it was going to be a fact-intensive exercise, which we certainly understand, but because any appeal from an order denying a motion to compel arbitration is subject, there's an automatic appeal and there's an automatic stay. That's something we'd very much like to avoid having happen twice. I do really want to talk about the defendant's ability to invoke the contract as a third party. Here again, we have a situation of the defendant completely changing horses midstream. The argument that they're making to this court about even what is the delegation clause is a different argument than they presented to the district court. In their motion, they said, and this is at page ID 2359, it's record entry 102, this is their motion to compel arbitration. The Exhibit E arbitration agreement included within the agreements entered into by all three plaintiffs contain a broad delegation provision, colon. They then block quote. It says, the underside and parties, dot, dot, dot, acknowledge covenant and agree that any claim dispute or other matter in question arising out of or related to the agreement, the project and or the system, including any alleged defect thereof, shall be subject to binding arbitration. That's the end of the quote. They don't so much as mention the AAA rules, the construction rules, which they now assert are controlling. So they never asserted these rules, the 9A, right? The district court? I'm sorry, Your Honor. They never even introduced them into the record. They've asked the court in their reply brief on appeal to take judicial notice of those rules, which we think is inappropriate for a number of reasons. You didn't get to brief the 9A issue? Is that what you're telling me? Never, Your Honor. It was never conveyed to us as the basis for their motion. Parties don't lose on issues that they never got to brief, as a general matter at least. I mean, anyway. And they fault us for not having challenged the delegation provision they now point to. It's because they never pointed to it. We never could have challenged it on unconscionability grounds. We never could have talked about it in the context of the language in which it appears. And all of the case law that they talk about that relies on the incorporation of AAA rules are different sets of AAA rules, not the construction industry arbitration rules. So we never had an opportunity to flesh any of that out at the district court. And then they're presenting a different argument to this court. With respect to the ability of any non-signatory in this context to invoke the arbitration agreement, number one, Your Honor is absolutely correct that there is an even higher standard when it comes to things like waiver because the presumption is the court is going to deal with those. But the other serious consideration here is that for even an ordinary delegation clause, there has to be clear and unmistakable evidence presented to the district court that the parties agreed to arbitrate those threshold issues because these are just antecedent arbitration agreements. They're a secondary arbitration agreement to arbitrate arbitrability. They introduced no evidence whatsoever that there was such a clause. They identified a different section than they now talk about. So it's not only not clear and unmistakable, it's no evidence whatsoever. And the idea that something could be, look, I have great respect for counsel for the defendants. I've worked with them in a number of cases. McGuire Woods is no small potatoes law firm. But if they couldn't recognize that there was a delegation clause, how could it possibly be clear and unmistakable? It defies credulity, Your Honor, and the standard is even higher to reach an issue like waiver. And the court's jurisprudence is quite clear on that, and that's even further away from having been satisfied here. So both as to the original trivest defendants and the new trivest defendants, they have no standing or ability to invoke it as nonsignatories such that even if the waiver issue doesn't reach the new trivest defendants or if the court finds for some reason that there is no waiver, they still don't have standing to move to compel arbitration. If I may, I want to ask you a question that just relates to the docket and the district court, and I don't mean to sort of catch you off guard, and I'll ask the same question to your friend. It looks like there's a notation that there's been a class proposed settlement in this case. There has, Your Honor. We have a conditional court approval settlement with Mr. Waller, not with any of the defendants or parties of this appeal. Oh, I see, not with any of these folks. And Mr. Waller had originally appealed from the district court's arbitration order. We asked the court to remand that in order to facilitate the settlement. Okay, so that's not going to bear on anything that's before us. That's correct, Your Honor. Okay, thank you. I think that the final point that I want to make here is that the district court's factual findings here are so adequately supported by citations to the record in terms of the evidence we put forth regarding the defendant's knowledge of this that there would be no basis under the clear air standard to set any of those factual findings aside, and there is no way to take that set of factual findings in this court's jurisprudence and reach a different result than the district court did. So unless the court has any further questions, that is all I have on the issue. Thanks. Thank you, Your Honors. Thank you, Your Honors. Two points on rebuttal. One, as to our preservation of the AAA rules, I confess we should have done a better job raising that below, but here's why it doesn't matter. This court says that you have to preserve issues, not arguments, and we absolutely preserve the issue that there is a delegation clause that requires that delegation to an arbitrator here. Why don't we say you can just make a different argument altogether than the one you made in the district court? That's news to me. The Chelf v. Prudential case is the one I would suggest to you. It really shows this difference between preserving an argument versus preserving an issue. Is that some habeas case or something? No, it's not, Your Honor. Well, I'm just deeply skeptical about basically everything on this arbitration issue, deeply skeptical that you guys didn't know full well that the agreements were there, skeptical that you can point to one provision in the district court and argue another one here. I mean, I've just never heard that that's the way we do this. In 18 years, I've sort of never seen that. So Chelf is the case I'd recommend to you, and I'll explain it. I doubt one case is going to vaporize that sense, but I guess I'm just, you know, it's just frustrating. We have a lot of cases, and to sort of be some of these arguments are really on the boundary of, like, perhaps should not have been made. So I think, Your Honor, that the Henry Schein case is important to keep in mind as the backdrop for all of this, that even if you think that the ultimate arguments for arbitration are not good, Henry Schein says that that still is a question for the arbitrator. And so that's what we're saying here. The arbitrator is the right decision maker, not the district court. The Chelf case, I mean, if I can explain it for just a second, I think you'll see why we like it. It says that when we're talking about preserving issues, the issue there was whether these planned participants had a right to be notified. And the plaintiffs argued in the district court, we have a right to be notified under ERISA, a statutory right, and they lost on that. And upon appeal, they said, actually, our right to be notified comes from the language of the plan itself. And what this court said is that that is not a waiver, that is not a forfeiture of that argument, that different text, the plan text rather than statutory text, creates that right, because it's the same issue, this right to be notified. Here we have the same issue. You can see where we raised it on page 1004. And on page 997, we did give the text of the entire agreement that incorporates the AAA rules to the district court, and we cited the Blanton case. Should we have done more? Yes, we should have. But did we do enough under the Chelf case? Yes, I think we did here. Thank you, Your Honors. Okay. Thank you. Thank you very much. The case is submitted.